NO. 07-02-0191-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 31, 2002



______________________________




IN THE INTEREST OF M.G. AND E.G., CHILDREN


_________________________________



FROM THE 242ND DISTRICT COURT OF SWISHER COUNTY;



NO. B-10079-00-10; HONORABLE ED SELF, JUDGE



_______________________________



Before QUINN and JOHNSON, JJ., and BOYD (1)

 Appellant Carmen Guerra appeals from a judgment terminating the parental rights
between Carmen and her children M.G. and E.G. By one issue she urges that the
evidence is factually insufficient to support the trial court's finding that termination of her
parental rights was in the best interest of the children. We affirm.

BACKGROUND

 Appellant Carmen Guerra was married to Rosendo Romero, Sr., when she was 16
years old. She had not completed high school when she married, and never did. She had
three children by Romero. The marriage was troubled and she separated from him in May,
1999. They were divorced in December, 1999. 

 After the divorce from Romero, Carmen's lifestyle, which had been poor to begin
with, deteriorated. Carmen did not take care of the homes where she and her children
lived. The homes were dirty, unkept, and infested with roaches and rats. The children
were dirty. There was, on occasion, only spoiled food and milk in the house. She entered
into serial relationships with men, among them Jesse Mancha, the alleged father of M.G.,
and Robert Garza, Jr., the alleged father of E.G. Carmen exhibited symptoms of
depression and psychological inability to cope with life situations and decisions.

 The three Romero children were removed from Carmen's custody by the Texas
Department of Protective and Regulatory Services (TDPRS) in May, 2000, because of
findings that the children had been sexually abused by Carmen's brother, Juan. Carmen,
on occasion, continued to live in the same house where her mother and brother, Juan,
lived. 

 M.G. was born in March, 2000. Five months after M.G. was born Carmen suffered
a miscarriage. TDPRS removed M.G. from Carmen in October, 2000, when he was six
months old. When E.G. was born on September 29, 2001, she was immediately removed
from Carmen's possession and placed in a foster home. 

 TDPRS eventually sought termination of Carmen's parental rights as to M.G. and
E.G. On March 11 and 12, 2002, the case was tried to the court sitting without a jury. 
Carmen's parental rights were terminated. Findings of Fact and Conclusions of Law were
entered. Such findings of fact include the following:

 4. The Court finds by clear and convincing evidence that it is in the best
interest of the children the subject of this suit for termination of the
parent/child relationship of Respondents CARMEN GUERRA, ROBERT
GARZA, JR., AND JESSE MANCHA. 

 Via one issue, Carmen challenges factual sufficiency of the evidence to support the
trial court's finding that termination of her parental rights was in the best interest of the
children. 

STANDARD OF REVIEW In reviewing a factual sufficiency of the evidence challenge to findings that
termination of parental rights is in the best interest of the children, an appellate court
reviews the evidence to determine if it is such that a reasonable fact finder could have
formed a firm belief or conviction that the challenged grounds existed. See In re C.H., U.S.
Tex. Sup. Ct. J. 1000, 2001 WL 1903109, *1, 5-6 (July 3, 2002); In re G.M., 596 S.W.2d
846, 847 (Tex.1980); State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979). (2)

 Many factors may be pertinent when deciding what is in the best interest of children
in a parental-rights termination case. See In re C.H., 2001 WL 1903109 at *9. Among
factors the trier of fact should consider, if applicable are (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these individuals to
promote the best interest of the child; (6) the plans for the child by these individuals or the
agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts
or omissions of the parent which may indicate that the parent-child relationship is not a
proper one; and (9) any excuse for the acts or omissions of the parent. See Holley v.
Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). But, any list of factors to be considered is
not exhaustive, nor must all factors from any such list be proved as a condition precedent
to termination of parental rights. See In re C.H., 2001 WL 1903109 at *9. ANALYSIS

 The record before us is replete with strong evidence that Carmen either was
unwilling or unable to keep her residence, and that of the children when they lived with her,
in a semblence of cleanliness. Witnesses graphically depicted Carmen's houses (she
moved frequently) as consistently littered with food, dirty diapers, refuse, stacks of papers,
clothing and dirty dishes. Conditions such as an uncovered heater on the floor where it
could be reached by a child were described. The houses contained infestations of vermin
such as mice, roaches and wasps. 

 The evidence would support a conclusion that Carmen's care of her children was
similar to her care for the houses. Testimony was presented that M.G. was
developmentally delayed at the time he was removed from Carmen's possession. On one
occasion Carmen was observed feeding M.G. from a bottle containing soured milk. When
M.G. was taken to the foster home which had been arranged for him, he had not been
bathed in some time and had a "stench" about him. After he was removed from Carmen's
care and placed in the foster home his development progressed significantly. 

 Carmen was provided opportunities to improve her education, psychological
condition, parenting skills, and personal habits during the relevant time periods. In her brief
she points to evidence of her progress in those areas during the time TDPRS and other
agencies were working with her before the termination trial. 

 Without detailing the evidence referred to by Carmen, we note that such evidence
might warrant a factfinder's determining that termination of her parent-child relationship
with M.G. and E.G. would not be in the best interest of the children. On the other hand,
the evidence, only part of which is set out above, could support the formation of a firm
belief or conviction by a reasonable factfinder that termination was in the best interest of
the children based upon the emotional and physical danger to the children in the future if
Carmen's rights were not terminated, the parental abilities of Carmen, the stability of the
home of the foster parents who wanted to adopt M.G. and E.G., and the acts and
omissions of Carmen in the past as to her lifestyle and care of her children. See id. 

 Accordingly, the evidence is factually sufficient to support the trial court's finding. 
We must, and do, overrule the issue. 


CONCLUSION

 Having overruled Carmen's sole issue, we affirm the judgment. 


 Phil Johnson

 Justice



Do not publish. 


 

 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. 
2. The standard does not require appellate deference to termination findings to the
extent that the findings will be upheld on appeal so long as the findings are not so against
the great weight and preponderance of the evidence as to be manifestly unjust. See In
re C.H., 2001 WL 1903109 at *8. 


dden="false"
 UnhideWhenUsed="false" Name="Light Grid Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0124-CR

 

                                                   IN
THE COURT OF APPEALS

 

                                       FOR
THE SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                      PANEL
B

 

                                                            OCTOBER 13, 2010

                                            ______________________________

 

                                                          JOSE
ANGEL REYES,

 

Appellant

 

                                                                             v.

 

                                                        THE STATE OF TEXAS, 

 

Appellee

                                           _______________________________

 

                           FROM THE 64TH DISTRICT COURT OF HALE
COUNTY;

 

NO. A17839-0811; HON. ROBERT W.
KINCAID, JR., PRESIDING

_______________________________

 

Opinion  

_______________________________

 

Before
QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Appellant
Jose Angel Reyes (appellant) appeals the trial courts judgment requiring him
to pay attorneys fees and a withholding order directing that those fees be
deducted from his inmate trust account. 
We modify both documents and affirm them as modified.

Background

            Appellant
was placed on deferred adjudication per his guilty plea to the crime of aggravated
assault with a deadly weapon.  As a
condition of probation, he was ordered to pay attorneys fees of $750.  Subsequently, the State moved to adjudicate
his guilt and revoke his probation because, among other things, he failed to
pay the aforementioned fees.  The motion was
granted, and the trial court sentenced appellant to ten years in prison.  It also ordered him to pay an attorneys fee
of $1,050, restitution in the amount of $30,043.01, a $1,000 fine and $285 in
court costs.  Another order, entitled
TDCJ Inmate Trust Fund Withdrawal Order, was signed by the trial court
directing the payment of $32,378.91 from appellants inmate trust account.  Thereafter, appellant perfected a timely
appeal.   

Issue One  Attorneys Fees

            Specifically,
appellant contends that the trial court erred by ordering him to pay $1,050 in
attorneys fees because the record contained insufficient evidence to show that
he had any financial resources from which to pay them.  We agree in part.

            As
disclosed by the record, appellant was determined to be indigent and,
therefore, received appointed counsel for both the original plea and adjudication
hearings.  Furthermore, nothing of record
illustrated that his economic status had changed between the time he was first
found impoverished and ultimately adjudicated guilty and sentenced to
prison.  Thus, the statutory elements
prerequisite to his being held obligated to pay $1,050 in fees have not been
established.  See Tex. Code
Crim. Proc. Ann. art.
26.05(g) (Vernon  Supp.
2010) (specifying when a trial court
may order one who received appointed counsel to pay attorneys fees).   

            Nonetheless,
the State contends that appellant implicitly agreed to pay $750 of the $1,050 fee
when he pled guilty per the parties bargain, received probation, and became
subject to the conditions of probation levied by the court.   Therefore, the argument goes, he cannot be
relieved of paying the $750 sum.  We find
the contention accurate.  

            This
court previously held, in Mayer v. State,
274 S.W.3d 898 (Tex. App.Amarillo
2008), affd,
309 S.W.3d 552 (Tex. Crim. App. 2010), that a trial court generally erred by
ordering a defendant to pay a fee for a court-appointed attorney when the
record contained no evidence illustrating that he had sufficient financial
resources to pay it.  Id. at 901-02.  Yet, we were not dealing with fees arising
from a plea bargain and levied as a condition of probation there.  In the latter circumstance, the result may
not be the same.  This
is so because an award of community supervision (or probation) is not a right,
but a contractual privilege.  Speth v. State, 6 S.W.3d 530, 534 (Tex.
Crim. App. 1999).  Additionally,
the conditions appended to the grant of community supervision
are terms of the contract entered into between the trial court and the
defendant.  Id.  More importantly, those
to which no one objects are considered to be affirmatively accepted as part of
the contract, which means, in turn, that the accused normally waives any
complaint with regard to them.  Id. 
In other words, one benefitting from the contractual privilege of
probation must complain at trial about any conditions he deems objectionable,
and unless he does that, belated objections are waived.  Id.    

            Given
Speth, we agree with the
State that appellant should have complained to the trial court about the
condition of his probation obligating him to pay $750 in attorneys fees at the
time the condition was imposed.  Because
he did not, he not only affirmatively accepted it but also waived any objection
to it.   The same is not true of the
additional $300 assessed once appellant was adjudicated guilty; the imposition
of that sum is controlled by the holding in Mayer.  And, because the record does not reflect that
appellant had the financial means to pay it, the trial court erred by imposing
it.  Accordingly, we modify the trial
courts judgment by reducing the amount of attorneys fees payable by appellant
from $1,050 to $750.  

Issue
Two  Withholding Order

            Through his second issue, appellant
contends that the trial court erred by entering its withholding order allowing
for money to be withdrawn from his inmate trust account.  This purportedly was error because he failed
to receive notice of the order (i.e.
was denied due process) and because insufficient evidence supported the award
of $1,050 in attorneys fees.  

            As for the amount of attorneys fees
levied, our disposition of the foregoing issue obligates us to also modify the
withholding order.  The sum subject to
collection will be reduced from $1,050 to $750 for the reasons explained above.

            As for the argument about notice and
due process, we note that the assessment of the fees arose as part of the
adjudication of appellants guilt in this criminal cause.  He had been found to be an indigent entitled
to appointed counsel.  Moreover, the
attorneys fee alluded to in the withholding order (as modified) was the sum
that appellant agreed to pay.  These
circumstances comport with those in Harrell
v. State, 286 S.W.3d 315 (Tex. 2009), an opinion we deem controlling.  Because Harrell had been determined to be an
indigent and the taxing of costs occurred as part of the two criminal cases
against him, he ha[d] already received all that due
process demands with regard to their taxation, according to the Supreme Court.   Id. at 320.  However,
the risk that the amounts contained in the withholding order may differ from
those actually taxed caused the Court to state that Harrell also was entitled
to notice of the withholding orders issuance and opportunity to test it.  Id. at 321.  That
concern proved accurate here, given our conclusion that the amount of fees
mentioned in the withholding order was excessive.  Yet, our so concluding also evinces that
appellant received the due process required by Harrell.  Before altering the
order, we were informed of the error. 
Moreover, that information was imparted to us by appellant; so, he
obviously had notice of the decree and opportunity to question its accuracy.  

            As the Supreme Court recognized in Harrell, [t]he constitutional
sufficiency of procedures provided in any situation, of course, varies with the
circumstances.  Id. at 319.  In other words, it is not a one size fits
all proposition.  The circumstances
involved can influence the particular procedures deemed sufficient, and though
the sequence of events at bar do not fit within the typical mode of due process,
they nonetheless evince the presence of due process.  Appellant had his notice of the withholding
order and opportunity to be heard about its accuracy.  Since that was enough in Harrell, it is enough here.

            We modify both the final judgment
and withholding order by reducing the amount of attorneys fees payable from $1,050
to $750 and affirm them as modified.[1]

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice

 

 

Publish.

 

            











[1]Counsel had previously filed a motion
to withdraw which we now deny as moot.